# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| Anthony Stewart Foreman, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| v. | ) | Case No: 12 C 50419 |
| Edward King, et al., | ) | |
| *Defendants.* | ) | Judge Frederick J. Kapala |

## ORDER

Defendants' motion to dismiss [52] is granted. Counts 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 43, 45, 46, 47, 48, 49, 50, 51, 55, 56, 57, 58, and 59 of the second amended complaint are dismissed. As a result, defendants Sisomphou Singmouangthong, Timothy Campbell, Brian Strawser, Daniel Watton, Cruz Padron, Brian Squires, Michael Booker, Marc Welsh, Carla Redd, Mark Sorensen, Stephen Pirages, Mark Marinaro, Timothy S. Hanson, Mayor Larry Morrissey, Patrick W. Hayes, Mark Rose, Rockford Police Department, Rockford Fire Department, City of Rockford Public Works, City of Rockford Department of Law, and the City of Rockford, Illinois, are terminated from this action.

## STATEMENT

In a sprawling 59-count second amended complaint, plaintiff, Anthony Stewart Foreman, alleges numerous violations of his constitutional rights under 42 U.S.C. § 1983, a variety of state law claims, and multiple civil conspiracies, all based on his encounters with various local governmental employees from 2006 through 2012. Currently before the court is a motion to dismiss several of these counts brought on behalf of the City of Rockford defendants. For the reasons stated below, the motion is granted.

### I. Statute of Limitations

In his complaint, plaintiff raises a number of claims based on: (1) an alleged raid on his business, JT's Bourbon Street Grille, that occurred on July 2, 2006, by Rockford Police Department ("RPD") officers Mark Sorensen and Stephen Pirages, and by Rockford Fire Department inspector Mark Marinaro; (2) the posting of "Do Not Back Into Stalls" signs in a parking lot used by plaintiff's customers in April 2007 under the direction of Timothy S. Hanson, the Director of the City of Rockford Public Works Department, and RPD Deputy Chief Michael Booker; and (3) an alleged raid on his business that occurred on June 17, 2007, by RPD officers Brian Squires, Sisomphou Singmouangthong, Timothy Campbell, Brian Strawser, Daniel Watton, and Cruz Padron.

In their motion to dismiss, defendants argue that the counts in the second amended complaint that are based solely on these incidents are time barred under either the two-year statute of

limitations period applicable to § 1983 claims, see Jenkins v. Vill. of Maywood, 506 F.3d 622, 623 (7th Cir. 2007), or the one-year limitations period applicable to state law tort claims brought against governmental entities and their employees, see Williams v. Lampe, 399 F.3d 867, 870 (7th Cir. 2005) (citing 745 ILCS 10/8-101). In his response, plaintiff does not directly challenge this timeliness argument, but rather merely contends that these are "specific instances of acts committed outside the limitations period that evince the existence of a conspiracy to deprive the plaintiff of his rights." While it is true that the statute of limitations would not bar consideration of the alleged conduct that occurred outside the limitations period for the limited purpose of determining whether a conspiratorial agreement existed, see Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir. 1988), a stand-alone claim based on that same conduct would be barred.

Accordingly, defendants' motion to dismiss is granted with respect to Counts 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 43, 46, and 47, as those counts are all time-barred on the face of the complaint.[1]

## II. Capacity to be Sued

In their motion to dismiss, defendants also argue that the City of Rockford's Fire Department, Police Department, Public Works Department, and Department of Law are not independent legal entities, and as such, they are not proper defendants in this action. The court agrees. Under Federal Rule of Civil Procedure 17(b), this court looks to state law to determine if a defendant has the capacity to be sued. To be sued in Illinois, a defendant must have a legal existence, either natural or artificial. Jackson v. Vill. of Rosemont, 180 Ill. App. 3d 932, 937 (1988). Courts have routinely held that a police department is not a suable entity in Illinois.[2] See, e.g., Hall v. Vill. of Flossmoor Police Dep't, No. 11-CV-5283, 2012 WL 379902, at *2 (N.D. Ill. Feb. 1, 2012) ("Police departments are departments of the municipalities they serve; they do not have distinct legal existences under Illinois law."); Isaacs v. St. Clair Cnty. Jail, No. 08-0417-DRH, 2009 WL 211158, at *3 (S.D. Ill. Jan. 29, 2009) ("Illinois Courts have not recognized a sheriff's office or a police department as a legal entity."); Magnuson v. Cassarella, 812 F. Supp. 824, 827 (N.D. Ill. 1992) (concluding that the "[Cook County Sheriff's Police Department] does not enjoy a separate legal existence apart from the Sheriff of Cook County, and therefore is not a suable entity"). Likewise, the other municipal departments are not legal entities separate from the municipality, and therefore, are also subject to dismissal. See generally Manney v. Monroe, 151 F. Supp. 2d 976, 988 (N.D. Ill. 2001) ("Departments of a governing body which have no legal existence separate from the governing body cannot be sued under Section 1983."); see also Stevanovic v. City of Chi., 385 Ill. App. 3d 630, 631 (2008) (noting that "[t]he Chicago fire department was . . . dismissed as a defendant from this case because it is not a legal entity separate from the City"); Dr. Martin Luther King, Jr. Movement Inc. v. City of Chi., 435 F. Supp. 1289, 1294 (N.D. Ill. 1977) (dismissing the

---

[1]The court notes that plaintiff has used a roman numeral scheme to label the counts in his complaint, but the court declines to follow suit as this is unduly cumbersome in this case, especially given that all of the counts from Count 40 and above are numbered incorrectly (e.g., Count 40 should be labeled "XL" not "XXXX" and so on).

[2]Indeed, this court has previously held in another case brought by plaintiff's counsel that a police department is not a suable entity. See Mitchell v. Nesemeier, No. 11 C 50329, slip op. at 4 (N.D. Ill. Nov. 5, 2012). It is unclear why counsel continues to advance such frivolous claims.

city's Department of Streets and Sanitation because it is "not a suable entity" and "does not enjoy independent legal existence"); Tate v. Milwaukee Cnty. Sheriff's Dep't, No. 08-C-1095, 2008 WL 5423984, at *3 (E.D. Wis. Dec. 29, 2008) (holding that a county's "Corporation Counsel Office is not a suable entity").

Based on the foregoing, the court grants defendants' motion to dismiss based on this argument. Accordingly, Counts 42, 43, 45, 46, 47, 48, 49, 50, 51, and 59 are dismissed.

### III. Failure to State a Claim

In the remaining counts that are currently challenged by the City of Rockford defendants, plaintiff raises claims for civil conspiracy, violation of equal protection, and violation of due process. Defendants argue that these counts should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. After review, the court agrees that, for the various reasons discussed below, these counts should be dismissed.

### A. Civil Conspiracy

In Count 40 of his second amended complaint, plaintiff alleges a wide-ranging conspiracy to interfere with his prospective economic advantage that existed from July 1, 2006, through February 5, 2012, by defendants Edward King, Brian Wadsworth, Matthew R. Leisten, T. Peterson, Garnhart, Singmouangthong, Campbell, Strawser, Watton, Padron, Squires, Booker, Marc Welsh, Carla Redd, Sorensen, Pirages, Marinaro, Hanson, Mayor Larry Morrissey, Patrick W. Hayes, and Mark Rose. In the only allegation actually contained in Count 40, as opposed to the entire 171 paragraphs preceding that count which are confusingly incorporated by reference into that count, plaintiff alleges that these defendants "engaged in a conspiracy to close JT's Bourbon Street Grille by a constant and sustained pattern of harassment that reduced the flow of customers to that establishment."

"[T]o establish a prima facie case of a civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." Scherer, 840 F.2d at 442. Mere conclusory allegations of a conspiracy have never been enough to state a claim. See Cooney v. Rossiter, 583 F.3d 967, 970 (7th Cir. 2009). Rather, in order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege facts in his complaint that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Where a plaintiff alleges "a vast, encompassing conspiracy . . . the plaintiff must meet a high standard of plausibility" before being allowed to proceed to discovery. Cooney, 583 F.3d at 971.

In this case, plaintiff has not alleged facts which make it plausible that there has been a far-reaching conspiracy against him that lasted for nearly six years and involved, among others, the Mayor, the Director of the Public Works Department, the Director of the Department of Law, a fire inspector, and several random RPD officers who happened to have some type of interaction with the plaintiff during that time period. Moreover, the only allegation of an agreement among these individuals to violate plaintiff's rights which can be located anywhere within the complaint is that someone (it is unclear who) overheard two police officers in February 2012 discussing plaintiff and JT's Bourbon Street Grille, while one of the officers allegedly said, "We finally got him." Notably,

3

there are no other allegations against these two officers, as they apparently were not involved in any of the encounters that plaintiff complains about in the complaint. These threadbare allegations are not sufficient to meet the "high standard of plausibility" that is required in this case. See Cooney, 583 F.3d at 971. Accordingly, defendants' motion to dismiss is granted as to Count 40.

### B. Equal Protection

In paragraph 86(q) of his second amended complaint, plaintiff alleges an equal protection violation against defendants Morrissey, Hayes, and Rose, and although it is not entirely clear, it appears that this allegation forms part of the basis for Counts 55 through 57. Plaintiff seems to allege that his tenants were paid by these defendants somewhere between $13,000 to $15,000 to relocate to a new apartment, while he was only paid $5,000, after the State of Illinois decided to buy plaintiff's building.

"The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination." Swanson v. City of Chetek, 719 F.3d 780, 783 (7th Cir. 2013). "The typical equal protection case involves discrimination by race, national origin or sex," but a claim can also be based on "the singling out of a person for different treatment for no rational reason." Id. A so-called "class-of-one" equal protection claim requires, at a minimum, allegations that "the defendants intentionally treated [plaintiff] differently from others situated similarly to [him] for no rational reason." Williamson v. Curran, 714 F.3d 432, 449 (7th Cir. 2013).

In this case, plaintiff has failed to set forth sufficient allegations to state a plausible claim for relief on his equal protection claim. See Iqbal, 556 U.S. at 678. Initially, the court notes that plaintiff's tenants were not similarly situated to plaintiff, who was the owner of the building. In any event, plaintiff's claim seems to be based on either a mistaken or fictitious allegation that he was only paid $5,000 to relocate. Notably, however, the only other allegation in the complaint concerning $5,000 is found in paragraph 83, wherein plaintiff indicates that he put a deposit down on a new rental property for his business in Hoffman Estates based on his belief that his relocation bid (for an unspecified amount) had been approved. When plaintiff later found out that the bid was reduced by nearly 50%, he allegedly "had to forfeit $5,000 in order to get out of the rental property agreement." This loss of $5,000 on a different property does not show that plaintiff was only given $5,000 to relocate. In fact, in the next paragraph, plaintiff seems to indicate that he is entitled to over $60,000 from the sale of his property. Because plaintiff has not plausibly alleged that he was treated differently from other similarly situated individuals for no rational reason, his equal protection claim fails. Accordingly, Counts 55, 56, and 57 are dismissed to the extent those counts contain plaintiff's equal protection claim.

### C. Due Process

In paragraph 86(r) of his second amended complaint, plaintiff alleges that defendants Morrissey, Hayes, and Rose violated his constitutional rights by "attempting to take the plaintiff's property without due process." This claim appears to form the remaining basis for Counts 55 through 57, although it is unclear from the structure of plaintiff's complaint. It is also unclear what property plaintiff is referring to in this allegation, but the court will assume it has to do with the

4

purchase of his property from the State of Illinois and his claim in paragraph 84 that, although "the State has paid for the property . . . the money was never given to the plaintiff."[3]

Plaintiff has failed to state a plausible claim for a due process violation. In order to have a viable due process claim based on an alleged taking of his property, plaintiff must first satisfy an exhaustion requirement. See Muscarello v. Ogle Cnty. Bd. of Comm'rs, 610 F.3d 416, 422 (7th Cir. 2010) (citing Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985)). This requires plaintiff to show, among other things, that he has exhausted all of his available state remedies for compensation. See id.; see also Serino v. Hensley, 735 F.3d 588, 592 (7th Cir. 2013) ("[T]he existence of an adequate state remedy for the plaintiff's injury eliminates the need for federal intervention via § 1983."); Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 961 (7th Cir. 2004) ("[O]ur case law explains that the Williamson County exhaustion requirement applies with full force to due process claims (both procedural and substantive) when based on the same facts as a takings claim."). Here, plaintiff has failed to meet this exhaustion requirement, and thus, he cannot proceed on his due process claim based on the alleged taking of his money from the sale of his property. Accordingly, Counts 55, 56, and 57 are dismissed to the extent those counts contain plaintiff's due process claim. Furthermore, the conspiracy claim against defendants Morrissey, Hayes, and Rose alleged in Count 58, which is merely derivative of these alleged equal protection and due process violations, also is dismissed.

## IV. CONCLUSION

Based on the foregoing, defendants' motion to dismiss is granted and Counts 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 43, 45, 46, 47, 48, 49, 50, 51, 55, 56, 57, 58, and 59 of the second amended complaint are dismissed. As a result, defendants Sisomphou Singmouangthong, Timothy Campbell, Brian Strawser, Daniel Watton, Cruz Padron, Brian Squires, Michael Booker, Marc Welsh, Carla Redd, Mark Sorensen, Stephen Pirages, Mark Marinaro, Timothy S. Hanson, Mayor Larry Morrissey, Patrick W. Hayes, Mark Rose, Rockford Police Department, Rockford Fire Department, City of Rockford Public Works, City of Rockford Department of Law, and the City of Rockford, Illinois, are terminated from this action.

Date: 6/16/2014

ENTER:

_____

FREDERICK J. KAPALA

District Judge

---

[3] In his response to the motion to dismiss, plaintiff characterizes his due process claim in a similar manner. He argues that "the City of Rockford refuses to pay to the plaintiff the money the State of Illinois gave to the City of Rockford for plaintiff's land," and that this amounts to a "taking" of his money. Although plaintiff cannot amend his complaint through his response to the motion to dismiss, the court can certainly rely on this response to the extent it helps clarify what type of claim plaintiff was attempting to raise in the complaint.

5